UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

OCTAVIO SANDOVAL,                    )
                                     )   No. CV-08-0303-CI
           Plaintiff,                )
                                     )   ORDER DENYING PLAINTIFF'S
v.                                   )   MOTION FOR SUMMARY JUDGMENT
                                     )   AND GRANTING DEFENDANT'S
MICHAEL J. ASTRUE, Commissioner      )   MOTION FOR SUMMARY JUDGMENT
of Social Security,                  )
                                     )
           Defendant.                )
                                     )

        BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct.
Rec. 21, 32.)   Attorney Robin Pugsley represents (Plaintiff);
Special Assistant United States Attorney David Burdett represents
the Commissioner of Social Security (Defendant).   The parties have
consented to proceed before a magistrate judge.   (Ct. Rec. 8.)
After reviewing the administrative record and briefs filed by the
parties, the court **DENIES** Plaintiff's Motion for Summary Judgment,
and directs entry of judgment for Defendant.

                            **JURISDICTION**

        Plaintiff protectively filed his first application for
disability insurance benefits (DIB) on August 15, 2002, alleging
disability due to cervical and lumbar strain, right hand and leg
numbness and tingling.   (Tr. 135.)   He alleged an onset date of
February 12, 2001.   (Tr. 114-17, 135.)   This first application was
denied initially on or about March 6, 2003.   (Tr. 97, 100.)
Plaintiff represents that while his initial application denial was

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

being appealed, he protectively filed a second DIB application on August 20, 2004. (Ct. Rec. 37 at 12.)  In the second application, he alleged disability due neck and shoulder problems.  (Tr. 196.) Although the record does not appear to include a second DIB application signed by Plaintiff, agency documents evidence a protective filing date of August 6, 2004, an alleged onset date of February 12, 2000, and references a prior DIB application that was denied in March 2003.  (Tr. 202-03.)

The second application was denied initially on December 1, 2004.  (Tr. 107.)   On or about May 5, 2005, Plaintiff timely requested an administrative hearing. (Tr. 94.)  A hearing was held before administrative law judge (ALJ) R.J. Payne on March 8, 2007, at which medical expert Robert Berselli testified.  (Tr. 1005-35.) A supplemental hearing was held on June 21, 2007, at which Plaintiff, who was represented by counsel, and vocational expert Sharon Welter (VE) testified. (Tr. 1035-97.)  Claimant was assisted by Spanish interpreter Miguel Kinney.  (Tr. 1035.)  On July 16, 2007, ALJ Payne denied benefits and the Appeals Council denied review.  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here.  At the time of the hearing, Plaintiff was 32 years old and married with four dependent children.  (Tr. 1038-39.)  He testified he could speak and read some English and write very little.  (Tr. 1040.)  Plaintiff graduated from a Mexican high school and moved to the United States when he

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

was 20 years old. *(Id.;* Tr. 585.)  He had prior work experience as an insulation worker, a sandblaster, a farm worker, agricultural sorter and a grinder.  (Tr. 1074-75.)   In February 2000, while driving a truck for work, he was involved in a motor vehicle accident and sustained serious injuries.  (Tr. 419.)   He was involved in a second motor vehicle accident in March 2002 in which his injuries were aggravated.   (Tr. 685.)   After several unsuccessful attempts to return to his former work, Plaintiff participated in vocational retraining by taking community college courses to become a pharmacy technician.  He took college classes four hours, four days a week for nine months.  (Tr. 1041.)  He testified he was unable to complete the program because he failed the pharmacology exam twice because the course was difficult, and he had problems with concentration due to headaches and pain in his neck and arm.  (Tr. 1042.)  Plaintiff testified he could no longer work because of the pain in his head and neck and shoulders.  (Tr. 1060.)

## ADMINISTRATIVE DECISION

At step one, ALJ Payne found Plaintiff had not engaged in substantial gainful activity since February 12, 2001.  (Tr. 28.)  At step two, he found Plaintiff had severe impairments of "status post motor vehicle accident with neck pain, low back pain, and shoulder pain status post surgery on the right, pain disorder and personality disorder."  *(Id.)*  After a thorough discussion of the medical evidence, the ALJ determined Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4

(Listings). (Tr. 35.) Noting inconsistencies and contradictions in the evidence and allegations made by Plaintiff, the ALJ found Plaintiff was less than fully credible. (Tr. 37-38.) At step four, the ALJ determined Plaintiff had the residual functional capacity (RFC) to perform light work with several non-exertional restrictions due to pain and the effects of medication. (Tr. 36.) Based on this RFC and VE testimony, the ALJ found Plaintiff was unable to perform his past relevant work. (Tr. 39.) Proceeding to step five, ALJ Payne determined Plaintiff was able to perform light, unskilled jobs that existed in significant numbers in the national economy, such as fast food worker, cashier II with a sit/sand option; cafeteria attendant; price marker; housekeeper/cleaner; car wash attendant; and sewing machine operator. The ALJ found Plaintiff also could perform sedentary, unskilled jobs in the national economy such as sewing machine operator, production assembler and cashier II. (Tr. 41.) He concluded Plaintiff was not under a "disability" as defined by the Social Security Act at any time through the date of his decision. (Tr. 21.)

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more

1   than one rational interpretation, the court may not
    substitute its judgment for that of the Commissioner.
2   *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of
    Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

3

4        The ALJ is responsible for determining credibility,
    resolving conflicts in medical testimony, and resolving
    ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
5   Cir. 1995). The ALJ's determinations of law are reviewed
    *de novo*, although deference is owed to a reasonable
6   construction of the applicable statutes. *McNatt v. Apfel*,
    201 F.3d 1084, 1087 (9th Cir. 2000).

7

8                        **SEQUENTIAL PROCESS**

9        Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the

10  requirements necessary to establish disability:

11           Under the Social Security Act, individuals who are
    "under a disability" are eligible to receive benefits. 42
12  U.S.C. § 423(a)(1)(D). A "disability" is defined as "any
    medically determinable physical or mental impairment"
13  which prevents one from engaging "in any substantial
    gainful activity" and is expected to result in death or
14  last "for a continuous period of not less than 12 months."
    42 U.S.C. § 423(d)(1)(A). Such an impairment must result
15  from "anatomical, physiological, or psychological
    abnormalities which are demonstrable by medically
16  acceptable clinical and laboratory diagnostic techniques."
    42 U.S.C. § 423(d)(3). The Act also provides that a
17  claimant will be eligible for benefits only if his
    impairments "are of such severity that he is not only
18  unable to do his previous work but cannot, considering his
    age, education and work experience, engage in any other
19  kind of substantial gainful work which exists in the
    national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus,
20  the definition of disability consists of both medical and
    vocational components.

21

22           In evaluating whether a claimant suffers from a
    disability, an ALJ must apply a five-step sequential
23  inquiry addressing both components of the definition,
    until a question is answered affirmatively or negatively
24  in such a way that an ultimate determination can be made.
    20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The
25  claimant bears the burden of proving that [s]he is
    disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.
26  1999). This requires the presentation of "complete and
    detailed objective medical reports of h[is] condition from
27  licensed medical professionals." *Id.* (citing 20 C.F.R. §§
    404.1512(a)-(b), 404.1513(d)).

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.   If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).   If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error.   Plaintiff argues the ALJ erred when he:(1) assessed Plaintiff's credibility; (2) failed to properly evaluate treating and examining physician opinions; (3) improperly evaluated Plaintiff's residual functional capacity; and (4) gave an incomplete hypothetical to the vocational expert. (Ct. Rec. 37.)   In supplemental briefing, the parties agree that the ALJ's finding that Plaintiff's alleged onset date is February 12, 2001, the date alleged in Plaintiff's first application, and consideration of the entire record is a *de facto* reopening of Plaintiff's first application (Ct. Rec. 38, 39.)  Therefore, the issue of reopening raised in Plaintiff's Motion for Summary Judgment

1 is moot.  For purposes of these proceedings, the alleged onset date

2 is February 12, 2000, the date of Plaintiff's injury and the date

3 recommended in the agency's 2004 Disability Report.  (Tr. 202.)

4                           **DISCUSSION**

5 **A.   Credibility**

6      Plaintiff argues the ALJ did not provide the requisite "clear

7 and convincing" reasons for rejecting his subjective complaints.

8 When the ALJ finds a claimant's statements as to the severity of

9 impairments, pain and limitations are not credible, the ALJ must

10 make a credibility determination with findings sufficiently specific

11 to permit the court to conclude the ALJ did not arbitrarily

12 discredit claimant's allegations. *Thomas v. Barnhart*, 278 F.3d 947,

13 958-959 (9th Cir. 2002); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46

14 (9th Cir. 1991) (en banc).  However, that an ALJ cannot be required

15 to believe every allegation of disabling pain, even when medical

16 evidence exists that a claimant's condition may produce pain.  "Many

17 medical conditions produce pain not severe enough to preclude

18 gainful employment."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.

19 1989).  Although an adjudicator may not reject a claimant's extreme

20 symptom complaints solely on a lack of objective medical evidence,

21 medical evidence is a relevant factor to consider. *Social Security*

22 *Ruling (SSR)* 96-7p.

23      If there is no affirmative evidence that the claimant is

24 malingering, the ALJ must provide "clear and convincing" reasons for

25 rejecting the claimant's allegations regarding the severity of

26 symptoms. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The

27 ALJ engages in a two-step analysis in deciding whether to admit a

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504
F.3d 1028, 1035-36 (9ᵗʰ Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273,
1281 (9ᵗʰ Cir. 1996).  Under the first step, the ALJ must find the
claimant has produced objective medical evidence of an underlying
"impairment," and that the impairment, or combination of
impairments, could reasonably be expected to cause "some degree of
the symptom." *Lingenfelter*, 504 F.3d at 1036.  Once the first test
is met, the ALJ must evaluate the credibility of the claimant and
make specific findings supported by "clear and convincing" reasons.
*Id.*  In addition to ordinary techniques of credibility evaluation,
the ALJ may consider the following factors when weighing the
claimant's credibility: the claimant's reputation for truthfulness;
inconsistencies either in his allegations of limitations or between
his statements and conduct; daily activities and work record; and
testimony from physicians and third parties concerning the nature,
severity, and effect of the alleged symptoms. *Light v. Social Sec.
Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Fair*, 885 F.2d at 597
n.5.

    As explained by the Commissioner in his policy ruling, the ALJ
need not totally reject a claimant's statements; he may find the
claimant's statements about pain to be credible to a certain degree,
but discount statements based on his interpretation of evidence in
the record as a whole. *SSR* 96-7p.  "For example, an adjudicator may
find credible an individual's statement as to the extent of the
functional limitations or restrictions due to symptoms; *i.e.*, that
the individual's abilities to lift and carry are compromised, but
not to the degree alleged." *Id.*  If the ALJ's credibility finding

1  is supported by substantial evidence in the record, "the court may

2  not engage in second-guessing." *Thomas,* 278 F.3d at 959; *Fair*, 885

3  F.2d at 604 ("credibility determinations are the province of the

4  ALJ").

5       Here, although the ALJ referenced observations by medical

6  providers of symptom magnification, potential secondary gain factors

7  and excessive pain behavior (Tr. 38), there is no affirmative

8  evidence of malingering.   The ALJ summarized Plaintiff's hearing

9  testimony and found his subjective complaints "regarding the extent

10 of his functional limitations" were not fully credible.   *Id.*   In

11 addition to referencing the lack of objective medical evidence to

12 support Plaintiff's allegation of total disability, the ALJ gave

13 other reasons for rejecting the severity of symptoms alleged.   He

14 first observed that, contrary to Plaintiff's testimony he could only

15 sit 15-20 minutes at a time, Plaintiff only stood three times in the

16 two hour hearing.   *Id.*   In *Perminter v. Heckler*, 765 F.2d 870 (9th

17 Cir. 1985), the court held denial of benefits cannot be based on the

18 adjudicator's observations of the claimant at the hearing, the so-

19 called "squirm test," when there is objective evidence to support

20 the claimant's statements.   However, where the ALJ articulates other

21 acceptable reasons for discounting subjective complaints of pain,

22 elimination of one inappropriate reason does not nullify the ALJ's

23 credibility assessment.   *Carmickle v. Commissioner, Social Security

24 Admin.*, 533 F.3d 1155, 1160-63 (9th Cir. 2008); *Nyman v. Heckler*, 779

25 F.2d 528, 531 (9th Cir. 1985) ("[t]he inclusion of the ALJ's personal

26 observations does not render the decision improper.")

27      The ALJ provided other "clear and convincing" reasons for

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

discounting Plaintiff's subjective complaints.  For example, as mentioned above, the ALJ properly noted comments from medical providers who observed symptom magnification, lack of objective results consistent with Plaintiff's complaints and excessive pain behavior.  (Tr. 38, 427, 437, 41-52, 458, 610.)  The record also includes comments from the physical capacities evaluator in 2004 indicating Plaintiff was not making an entirely full effort during testing, and he was physically capable of doing more than demonstrated.  (Tr. 952.)  It is noted on independent review that treating physician Robert Schneider, M.D., observed normal muscle tone, strength and bulk in upper extremities, and normal, pain-free range of motion in the right shoulder, when examining Plaintiff over the years.  (*See, e.g.,* Tr. 719-20, 724-25, 740, 746-47, 754-55, 768, 982.)  In addition, the ALJ referenced examining medical providers who specifically found nothing in their examination or the results of objective testing that would cause limitations in his ability to work.  (Tr. 38, 418-476.)  Lack of objective medical evidence and the observations of third parties are "clear and convincing" reasons to discount credibility.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991); *Thomas*, 278 F.3d at 958-59.

Regarding Plaintiff's activities of daily living, the ALJ cited Plaintiff's ability to attend college four hours a day, four days a week for nine months (Tr. 38), as an activity inconsistent with an inability to concentrate. *See Matthews v. Shalala,* 10 F.3d 678, 680 (1993)(attending school three days a week inconsistent with alleged inability to perform all work).  He also noted inconsistent reports by Plaintiff regarding his ability to speak and understand English

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

where the record showed he took college classes in English, read English books and was able to converse with medical providers. (Tr. 38.)   In 2003, examining psychololgist Frank Rosekranz, Ph.D., reported Plaintiff spoke English during his interview even though there was a Spanish interpreter present.  (Tr. 586.)  In 2005, the vocational assessment evaluator observed Plaintiff "has highly competitive communication skills in both Spanish and English," and demonstrated strong English language skills.  (Tr. 336.)  Because the ALJ's findings are supported by the record, the ALJ could reasonably infer that Plaintiff's lack of candor about his language abilities could carry over to his description of pain.

Nonetheless, the ALJ credited to a degree Plaintiff's statements regarding pain.   For example, at step four, discussed below, the ALJ included significant physical limitations in his RFC findings, found Plaintiff was restricted by mild to moderate pain and the effects of medication, and concluded Plaintiff could no longer perform his past work in the medium to heavy level of exertion.  (Tr.  36.)  Based on Dr. Schneider's records, objective medical testing, and the opinions of several examining specialists, the ALJ reasonably discounted Plaintiff's assertions that his impairments precluded all substantial gainful employment. (Tr. 39.) Where, as here, there is substantial evidence to support the ALJ's determination that Plaintiff's self-reported limitations were not entirely credible, the court may not second-guess the ALJ's findings.

**B.   Residual Functional Capacity**

Plaintiff contends the ALJ did not properly evaluate his RFC

1   and therefore, the hypothetical presented to the VE at step five was

2   incomplete, which renders the ALJ's step 5 findings unsupported by

3   substantial evidence.  (Ct. Rec. 37 at 33-35.)

4       In disability proceedings, the final determination regarding a

5   claimant's ability to perform basic work-related activities is the

6   sole responsibility of the Commissioner.  20 C.F.R. § 404.1546; *SSR*

7   96-5p (RFC assessment is an administrative finding of fact reserved

8   to the Commissioner).  The RFC is an administrative finding

9   regarding what a claimant can do despite limitations based on all

10  medical evidence in the record and the claimant's credible

11  allegations.  No special significance is given to a medical source

12  opinion on issues reserved to the Commissioner.  20 C.F.R. §§

13  404.1527(e); *SSR* 96-5p.  Further, where the ALJ's determination is

14  a rational interpretation of the evidence, the court may not

15  substitute its judgment for that of the Commissioner.  *Tackett*, 180

16  F.3d at 1097.

17      When an ALJ evaluates the medical evidence submitted he must

18  explain the weight given to the opinions of accepted medical sources

19  in the record.  The agency regulations distinguish among the

20  opinions of three types of accepted medical sources: (1) treating

21  sources; (2) examining sources; and (3) sources who have neither

22  examined nor treated the claimant, but express their opinion based

23  upon a review of the claimant's medical records.  20 C.F.R. §

24  404.1527.  A treating physician's opinion carries more weight than

25  an examining physician's, and an examining physician's opinion

26  carries more weight than a non-examining reviewing or consulting

27  physician's opinion.  *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), The adjudicator must provide "clear and convincing" reasons for rejecting an uncontradicted medical source opinion and specific and legitimate reasons for rejecting a contradicted opinion. The reasons must be supported by substantial evidence in the record. *Andrews,* 53 F.3d at 1043.   In addition to medical reports in the record, the testimony of a non-examining medical expert selected by the ALJ may be helpful in his adjudication.   *Andrews,* 53 F.3d at 1041 *(citing Magallanes v. Bowen,* 881 F.2d 747, 753 (9th Cir. 1989)). Testimony of a medical expert may serve as substantial evidence when supported by other evidence in the record. *Id.* However, the opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831 (*citing Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990).

Here, after a thorough discussion of the medical evidence (Tr. 28-35, 39), and specific credibility findings, the ALJ found Plaintiff could perform light work with the following RFC:

> He can lift and carry 20 pounds occasionally and 10 pounds frequently.  He can sit 2 hours at a time for a total of 6 hours in an 8-hour day.  He can stand and/or walk 2 hours at a time for a total of 6 hours in an 8-hour day. He is unable to engage in frequent or prolonged pushing/pulling of arm controls.  He is capable of occasional stooping, crouching, kneeling, crawling, and balancing. He can occasionally climb ramps or stairs, but should avoid climbing ladders, ropes or scaffolds.  He should avoid frequent or prolonged overhead reaching.  He should avoid exposure to heavy industrial type vibration and hazardous machinery.  He is able to understand and remember instructions and procedures.  He is able to attend and persist on tasks with occasional distractions by pain preoccupation.  He is able to interact appropriately.  He is able to take precautions, travel, and set goals.  He takes prescription medication for his frequent, mild to moderate physical and mental

symptomatology, however, despite the levels of pain and/or effects of medicine, he would be able to remain reasonably attentive and responsive in a work setting and would be able to carry out normal work assignments satisfactorily.

(Tr. 36.)

Plaintiff argues generally that the ALJ did not give legally sufficient reasons for rejecting opinions from treating and examining medical sources. (Ct. Rec. 37 at 27.) However, he does not specify which opinions by which physicians were improperly rejected, and the court may not consider matters that are not "specifically and distinctly argued" in his brief. *Carmickle*, 533 F.3d at 1161 n.2; *Paladin Associates, Inc., v. Montana Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003). Nevertheless, a *de novo* review of the entire record indicates the ALJ's RFC findings reflect a reasonable interpretation of the evidence, and are consistent with (or more limited than) the opinions of treating physician Dr. Schneider. For example, in November 2003, Dr. Schneider, a pain management specialist,[1] completed an estimate of physical capacities and opined Plaintiff could sit six hours in an eight-hour day, and stand and walk each three hours at a time for a total of six hours standing and walking in an eight-hour day. He opined Plaintiff could lift and carry 21 to 25 pounds occasionally and 11 to 20 pounds frequently. He estimated Plaintiff could occasionally bend, squat, kneel, and seldom crawl, climb or reach above shoulder level. (Tr. 912.) In April 2004, Dr. Schneider opined Plaintiff was

---

[1] Under the agency regulations, the opinions of medical specialists generally are given more weight than the opinions of non-specialists in that area of practice. 20 C.F.R. §404.1527(d)(5).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

precluded only from working at his "usual and customary occupation" (*i.e.*, insulation installer). (Tr. 760.) In June 2004 and January 2007, Dr. Schneider opined Plaintiff would have permanent residuals, but did not conclude they precluded Plaintiff from his usual occupation. (Tr. 765, 991.) At no time did Dr. Schneider opine Plaintiff was totally and permanently incapable of working. Further, the ALJ credited to a degree Plaintiff's subjective pain complaints and found he could no longer perform his past work, was restricted in his ability to reach overhead frequently or for prolonged periods of time, and had mild to moderate restriction due to pain. (Tr. 39.) The ALJ's final RFC determination is a rational interpretation of substantial evidence in the record in its entirety. Further, the ALJ did not err in relying on the treating physician's opinions. Even if conflicting evidence might support a different interpretation, under the applicable standard of review, the Commissioner's resolution of the evidence is conclusive and may not be disturbed by the reviewing court. *Sprague,* 812 F.2d at 1229-30; *Allen,* 749 F.2d at 579.

**C.   Step Five - Hypothetical Question**

At step five, the burden shifts to the Commissioner to show that (1) the claimant can perform other substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). In making the step five determination, an adjudicator may rely on vocational expert testimony to find there are other jobs a claimant can perform if the hypothetical presented to the expert includes all functional

limitations supported by the record and found credible by the ALJ. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Plaintiff argues that because the ALJ did not include certain restrictions propounded by his attorney, the VE testimony should not be considered substantial evidence to support the ALJ's step five finding. (Ct. Rec. 37 at 34-35.) However, an ALJ is not obliged to accept as true the those limitations propounded by Plaintiff's counsel. *Martinez v. Heckler*, 807 F.2d 771 (9th Cir. 1986); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001)(ALJ free to reject restrictions not supported by substantial evidence). Plaintiff also appears to argue the ALJ ignored the testimony of medical expert Dr. Berselli. (Ct. Rec. 37 at 26.) This argument is without merit. As discussed above, the opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinions of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831. In fact, Dr. Berselli opined Plaintiff could occasionally lift 50 pounds, and the ALJ properly found the treating physician records supported a more limited level of exertion. (Tr. 39, 1011.) Consistent with Dr. Berselli's testimony, the ALJ incorporated the effects of pain and the need for a sit/stand option. (Tr. 36, 39.) Other restrictions are supported by substantial evidence from Dr. Schneider, as well examining physicians and psychologists. The ALJ did not err in his consideration of Dr. Berselli's testimony.

The hearing transcript indicates that the ALJ's third hypothetical to the VE described an individual with Plaintiff's background and education, the physical capacity to lift ten pounds

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

frequently and twenty pounds occasionally, who had the physical limitations identified by Dr. Schneider in November 2003, and non-exertional limitations identified in the ALJ's first hypothetical. (Tr. 912, 1076, 1078.)  The VE testified that with these limitations and limited English reading and writing, Plaintiff could perform light unskilled work that allowed for a sit/stand option, such as cafeteria  worker, cashier II, car wash attendant; and sedentary work.  (Tr. 1079, *see also* Tr. 1094-95.)  The ALJ did not err in relying on the treating physician's opinions, and as discussed above, he did not err in discounting Plaintiff's subjective complaints. The ALJ's hypothetical is not deficient and is supported by the record viewed in its entirety; therefore, the VE testimony is substantial evidence that supports the ALJ's step five findings. Although the record may support another rational interpretation of evidence, it is not the role of the court to substitute its judgment for that of the Commissioner.  Accordingly,

**IT IS ORDERED:**

1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 21)** is **DENIED;**

2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 32)** is **GRANTED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for the Defendant and the file shall be closed.

DATED December 31, 2009.


_____S/ CYNTHIA IMBROGNO_____
UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17